Filed 3/19/25  P. v. Washington CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B327869 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. ZM023624) |
| v. | |
| CLAYBORN WASHINGTON, | |
| Defendant and Appellant. | |
| THE PEOPLE, | B328270 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. ZM033875) |
| v. | |
| JESUS MAGANA, | |
| Defendant and Appellant. | |

APPEALS from an order of the Superior Court of Los Angeles County, Mark S. Arnold, Judge. Reversed and remanded with directions.

Paul R. Kraus, under appointment by the Court of Appeal, for Defendants and Appellants.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill, and Eric J. Kohn, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Clayborn Washington was convicted of five sexually violent offenses that took place in 1984. Jesus Magana was convicted of two counts of committing lewd and lascivious acts on a child under the age of 14 that took place in 2011. Before Washington and Magana were released, the People in each case filed petitions to commit the defendants as sexually violent predators (SVP's) under the Sexually Violent Predator Act (SVPA; Welf. & Inst. Code, § 6600 et seq.).[1] In both cases the trial courts, after conducting court trials, found the petitions to be true, declared the defendants to be SVP's, and committed them to the California Department of State Hospitals (DSH) for an indeterminate term.

Washington and Magana separately appealed, arguing, among other contentions, that the lack of a required jury trial advisement and personal waiver of the right to a jury trial under the SVPA—unlike statutes governing trials for other types of civil commitments—violated the alleged SVP's right to equal protection under the federal and California Constitutions. (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7.) In both cases, however, the

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

2

defendants did not raise their equal protection challenges in the trial court. We conditionally affirmed the orders declaring Washington and Magana to be SVP's and committing them to DSH for an indeterminate term. We remanded for Washington and Magana to raise their equal protection challenges in the trial court. We ordered in each case that upon a showing that SVP's and other civil committees are similarly situated with respect to their right to a jury trial, the People had the burden to justify the differential treatment. (*People v. Magana* (2022) 76 Cal.App.5th 310, 314 (*Magana II*); *People v. Washington* (2021) 72 Cal.App.5th 453, 459 (*Washington*).)[2]

On remand, the trial court considered the two cases together and decided (without objection) that the evidentiary hearing would proceed in two phases, first considering whether SVP's were similarly situated to other civil committees with respect to their right to a jury trial, and second, if they are similar, is there a compelling state interest that justifies the disparate treatment of SVP's. On January 17, 2023, at the conclusion of the evidentiary hearing, the court held that SVP's were not similarly situated to other civil committees, and therefore there was no equal protection violation. The court did not consider, and the parties did not address, whether there was a rational basis for disparate treatment of SVP's and other civil committees.

Washington and Magana again appealed, arguing SVP's are not similarly situated to other civil committees, and there is no

---

[2]    In *Magana I* (*People v. Magana* (Apr. 29, 2019, B288123) [nonpub. opn.]), we reversed the trial court's order finding no probable cause to support the petition to commit Magana as an SVP. On remand, the court made a finding there was probable cause to believe Magana met the criteria for commitment as an SVP.

rational basis for the differential treatment of SVP's and other civil committees. However, during the pendency of the appeals the Supreme Court decided in *People v. Hardin* (2024) 15 Cal.5th 834, 850-851 (*Hardin*) that courts in evaluating equal protection claims no longer should consider whether the two groups are similarly situated, focusing instead only on "whether the challenged difference in treatment is adequately justified under the applicable standard of review." In light of the change in the standard for evaluating an equal protection claim, we reverse the trial court's January 17, 2023 order finding no equal protection violation and again remand for the trial court to hold a hearing, at which the parties may present evidence and argument, to determine whether there is a rational basis for the differential treatment of SVP's as compared to other civil committees with respect to a jury trial advisement and personal waiver.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      People v. Washington *(Case No. B327869)*

On May 14, 2014 the People filed a petition to commit Washington as an SVP upon his release from prison. On April 24, 2019, the date set for trial, Washington appeared from the state hospital by speakerphone, with his attorney present in court. The trial court confirmed with Washington that he did not want to be present for the trial; he agreed that his attorney would represent him; and he gave up his right to be present at trial. At the conclusion of the hearing, the court stated that "since there is no demand for a jury trial, the petition will be heard by me without the presence of a jury." The court inquired whether "both sides agree with that," to which Washington's attorney responded, "Yes, your Honor"; the prosecutor also agreed. The court did not advise

4

Washington of his right to a jury trial or inquire whether he wanted a jury trial. The trial commenced as a court trial on April 25. On April 30 the court found the petition to be true and declared Washington to be an SVP. The court committed Washington to DSH for an indeterminate term.

Washington appealed, arguing the trial court erred by failing to advise him of his right to a jury trial and by not taking an express personal waiver of that right, analogizing to the requirements in the statutory schemes for extending the involuntary commitment of a mentally disordered offender (MDO) (Pen. Code, § 2972, subd. (a)(1) & (2)) and for extending the involuntary commitment of a person initially committed after pleading not guilty by reason of insanity (NGI) to a criminal offense (*id*., § 1026.5, subd. (b)(4) & (5)).[3] Both the MDO and NGI statutes require the trial court to advise the committee of his or her right to a jury trial and the committee to waive that right. We rejected Washington's contention that the jury trial protections under the MDO and NGI statutes applied to SVP proceedings, concluding the SVPA's absence of a requirement for a jury trial advisement or a personal waiver of that right evinced a legislative

---

[3]     As we explained in *Washington, supra*, 72 Cal.App.5th at page 462 and *Magana II, supra*, 76 Cal.App.5th at page 316, an alleged SVP is entitled to a jury trial, but only upon a demand by the alleged SVP or his or her attorney. Section 6603, subdivision (a), provides, "A person subject to this article is entitled to a trial by jury . . . ." Subdivision (b), in turn, provides, "The attorney petitioning for commitment under this article has the right to demand that the trial be before a jury." Further, "[i]f the person subject to this article or the petitioning attorney does not demand a jury trial, the trial shall be before the court without a jury." (*Id*., subd. (f).)

intent not to provide these procedural protections. (*Washington, supra*, 72 Cal.App.5th at pp. 465-466.) We also rejected Washington's due process challenge to the SVP statute. (*Id.* at p. 471.)

With respect to Washington's equal protection challenge, we observed, "[W]e have difficulty seeing how the dangerousness of an SVP would justify denying an alleged SVP the procedural protections for the right to a jury trial afforded other civil committees, especially given the significant liberty interests at stake for an alleged SVP facing a potential indefinite commitment." (*Washington, supra*, 72 Cal.App.5th at p. 474.) We conditionally affirmed the order declaring Washington to be an SVP and committing him to the DSH for an indeterminate term and remanded for the trial court to allow Washington to raise his equal protection claim. We directed that "upon a showing SVP's and other civil committees are similarly situated as to their right to a jury trial, the People will have the burden to justify the differential treatment. If the trial court determines there is an equal protection violation, the court shall vacate the order declaring Washington to be an SVP and set the matter for a jury trial, unless Washington provides a knowing and intelligent waiver of his right to a jury trial after being personally advised of that right." (*Id.* at p. 475.)

B.    People v. Magana *(Case No. B328270)*

On November 7, 2016 the People filed a petition to commit Magana as an SVP upon his release from prison. On February 3, 2021 Magana appeared for trial by videoconference from the state hospital, assisted by a Spanish language interpreter. After defense counsel advised the trial court that neither he nor Magana was requesting a jury trial, the court advised Magana as to his

6

right to a jury trial: "[M]y understanding is that both sides have agreed . . . to try this matter without a jury, and—so it will be a court trial for Mr. Magana's benefit. [¶] In a court trial, the same burden of proof applies as in a jury trial. [The] court would have to be convinced beyond a reasonable doubt [of] the allegations . . . that are in the petition in order to sustain the petition. [¶] If the People fail to meet that burden, then the petition would not be sustained, and Mr. Magana would be released. Okay?" The court then proceeded to ask Magana whether he waived his right to a jury trial and agreed to have a court trial, to which Magana responded, "Yes. That's correct." The prosecutor and defense counsel joined in the waiver. The trial commenced as a court trial. On March 16 the trial court found the petition to be true, declared Magana to be an SVP, and committed him to the DSH for an indeterminate term.

Magana timely appealed, arguing the trial court violated his right to due process and equal protection by failing to provide him a sufficient advisement of his right to a jury trial and requiring he personally waive that right, which would have been required under the MDO and NGI commitment statutes. We concluded Magana's equal protection claim "likely had merit" and that a rational basis review standard applied to his claim. (*Magana II, supra*, 76 Cal.App.5th at p. 314.) We explained, "Even under this deferential standard, the People have not shown a legitimate government purpose to justify differential treatment of SVP's from other civil committees with respect to advisement of an SVP's right to a jury trial and a personal waiver of that right. However, because Magana did not raise his equal protection claim in the trial court, we remand for Magana to raise his equal protection claim, and upon a showing SVP's and other civil committees are similarly situated as to their right to a jury trial, to provide an

7

opportunity for the People to meet their burden to justify the disparate treatment of SVP's." (*Ibid*.)

We conditionally affirmed the order declaring Magana to be an SVP and committing him to the DSH for an indeterminate term. (*Magana II, supra*, 76 Cal.App.5th 310 at p. 314.) Further, we directed the trial court that if on remand it "determines there is an equal protection violation, the court shall vacate the order declaring Magana to be an SVP and set the matter for a jury trial, unless Magana provides a knowing and intelligent waiver of his right to a jury trial after being personally advised of that right." (*Ibid*.)

C.    *Proceedings on Remand*

On January 24, 2022, after we issued our decision in *Washington*, Washington filed a "motion to show SVP's and other civil committees such as MDO's and NGI's are similarly situated as to jury trial protections such that the district attorney must justify differential treatment." Washington argued in the motion that the Supreme Court's ruling in *People v. McKee* (2010) 47 Cal.4th 1172, 1203 (*McKee I*) that MDO's and SVP's are similarly situated for equal protection purposes applied to Washington's equal protection claim, shifting the burden to the People to justify the differential treatment with respect to jury trial waivers.

On February 28, 2022 the trial court[4] held a hearing after remittitur. Washington's attorney and the prosecutor were present; Washington did not appear because the hospital had not been able to arrange for his presence. The prosecutor requested the court handle the evidentiary hearing on Washington's equal

---

[4]    Judge Mark S. Arnold.

8

protection challenge in two phases. He argued, "I think it would be the most efficient way, if the court was willing. If we handle the similarly-situated prong first, I can be ready on that substantially quicker than if we were to do both prongs at once. And depending on the court's ruling on prong 1, we may never have to get to prong 2." The court responded, "That's fine." The parties then agreed on a hearing setting for March 28, which was later continued to June 13, 2022.

The remittitur in *Magana II* issued on May 25, 2022. At the hearing setting on June 13, the court (Judge Arnold)[5] held a hearing in both the *Washington* and *Magana* matters. Washington appeared by videoconference; Magana did not appear for the hearing. At the outset of the hearing the court stated, "The Court of Appeal has remanded the case[s] back to the trial court to determine whether sexually violent predators are treated differently than mentally disordered sex offenders, people who have plead not guilty by reason of insanity," and people committed under the Lanterman-Petris-Short Act (§ 5000 et seq.; the LPS Act).[6] The court observed that the SVPA does not require "a personal, knowing waiver" of the defendant's right to a jury trial, but the MDO, NGI, and LPS statutes required such a waiver. The court continued, "[T]he Court of Appeal wants the trial court to

---

[5] Judge James R. Dabney initially presided over the *Magana* case on remand. On June 13, 2022 Judge Dabney transferred the *Magana* case to Judge Arnold. Judge Arnold subsequently handled both cases, and the same attorney represented Washington and Magana.

[6] Although the parties focused on the MDO and NGI statutes in *Washington* and *Magana II*, on remand the evidentiary hearing also addressed LPS committees.

9

make a determination of whether there is an equal protection violation for sexually violent predators; whether sexually violent predators are treated differently; and if they are, whether there is a legal justification for that." The court indicated it would hold one evidentiary hearing and issue a single ruling for both cases.

On the day of the hearing setting Magana filed a motion to show SVP's and other civil committees such as MDO's and NGI's are similarly situated as to jury trial protections, which was identical to the motion filed in the *Washington* case. On August 8, 2022 the People filed a brief (with respect to both cases) arguing defendants in SVP trials are not similarly situated to civil committees in trials under the MDO, NGI, and LPS statutes for purposes of a jury trial advisement and personal waiver.

In their brief the People relied on *People v. McKee* (2012) 207 Cal.App.4th 1325, 1347 (*McKee II*), in which the Court of Appeal upheld the findings of the trial court on remand following the Supreme Court's decision in *McKee I, supra*, 47 Cal.4th 1172. In *McKee II*, the trial court found that the indefinite commitment of SVP's and the burden on SVP's to prove they should be released (in contrast to MDO's and NGI's) was justified by the danger SVP's posed to society. (*McKee II*, at p. 1347.) The Court of Appeal explained, "We conclude the trial court correctly found the People presented substantial evidence to support a reasonable perception by the electorate [in Proposition 83] that SVP's present a substantially greater danger to society than do MDO's or NGI's, and therefore the disparate treatment of SVP's under the Act is necessary to further the People's compelling interests of public safety and humane treatment of the mentally disordered." (*Id*. at pp. 1330-1331.)

The People pointed out that at the evidentiary hearing on remand following *McKee I, supra*, 47 Cal.4th 1172, the People

presented evidence showing SVP's are "significantly different from MDO's and NGI's diagnostically" and are "clinically distinct" from other civil committees.  (See *McKee II, supra,* 207 Cal.App.4th at pp. 1344, 1347.)  Thus, the People argued, because of the diagnostic differences between SVP's and other civil committees, it is more likely that MDO, NGI, and LPS committees have a lesser capacity to understand the procedural protections available to them, including the right to a jury trial, as compared to SVP's. Further, the People intended to present evidence that SVP's have a greater understanding of legal procedures and their legal rights than MDO, NGI, and LPS committees.

Washington and Magana responded in their joint reply brief that any diagnostic differences identified on remand in *McKee II* went to the justification of the disparate treatment of SVP's and other similarly situated civil committees, not to whether the groups were similarly situated in the first place, which the Supreme Court decided in *McKee I, supra*, 47 Cal.4th at page 1203.  Moreover, the diagnostic differences and dangerousness of SVP's provided reasons for a longer commitment term, but they did not justify the lack of a jury trial advisement and personal waiver.

On August 29, 2022 the trial court informed counsel it would bifurcate the matter and consider in the first phase "whether [Washington and Magana] can demonstrate by a preponderance of the evidence that sexually violent predators are similarly situated as to mentally disordered sex offenders, people who have been deemed criminally insane, and LPS conservatees, regarding the purpose of a jury trial advisement and waivers."  If Washington and Magana prevailed in the first phase, "then the second phase would be [whether] there a compelling state interest that justifies the disparate treatment of sexually violent predators."

11

The evidentiary hearing commenced on December 20, 2022. Washington waived his presence; Magana appeared by videoconference. The attorney for Washington and Magana relied on the holding in *McKee I, supra*, 47 Cal.4th at page 1203 that SVP's and MDO's were similarly situated for purposes of equal protection. Further, he argued, "the purpose[s] of the MDO and SVP statutes are the same, to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for their disorders." The attorney added that in *Magana II, supra*, 76 Cal.App.5th at page 314 this court stated that "'as in *Washington*, Magana's equal protection claim likely has merit.'" Therefore, based on *McKee I*, *Washington*, and *Magana II*, both defendants had met their "threshold requirement" to show SVP's were similarly situated to other civil committees.

Dr. Harry Goldberg, a forensic clinical psychologist with extensive experience evaluating SVP's, MDO's, and NGI's, testified for the People. The trial court admitted a document prepared by a DSH employee containing data on the primary and secondary diagnoses of civil committees and each committee's treatment participation. The court also admitted a report and addendum prepared by Dr. Goldberg, which addressed the differences among SVP, MDO, and NGI committees based on Dr. Goldberg's evaluations of his patients.[7] Dr. Goldberg testified, based on his review of the DSH data, that between 75 and 82 percent of MDO, NGI, and LPS committees received a primary diagnosis of schizophrenia or schizoaffective disorder. By contrast, over 90 percent of SVP's had a primary diagnosis of paraphilic

---

[7] Defense counsel objected to admission of the exhibits offered by the People. The objections are not at issue on appeal.

disorder, and less than 2 percent had a diagnosis of schizophrenia or schizoaffective disorder.[8]

Dr. Goldberg opined with respect to the diagnostic manual for diagnosing mental disorders (the DSM-5) that committees with schizophrenia and schizoaffective disorder generally have visual or auditory delusions or hallucinations, disorganized speech or behavior, poor executive functioning, and an inability to perform the activities of daily life. Committees with schizoaffective disorder in addition suffer from depression (typically involving lack of energy) or mania (hyper energy).

An MDO is a person with a "severe mental disorder" that affects the person's thoughts, perceptions of reality, and judgment and behavior, where the mental disorder was a contributing factor to the commission of a forceful and violent crime. A person meets the criteria for an NGI if, due to a mental disorder, the person does not know the difference between right and wrong or does not understand what had occurred during the crime. Usually, when MDO's or NGI's are released, they are discharged to a facility that provides treatment and medication to assist with a transition to self-care, although many still require part- or full-time care to survive. An SVP, by contrast, is a person who has a mental disorder that predisposes the person to commit criminal sexual acts (paraphilic disorder, and commonly pedophilia), and has difficulty controlling the disorder. Further, SVP's typically do not have difficulty completing the activities of normal life.

---

[8]    Dr. Goldberg testified about civil committees, but he clarified that there was not a significant difference between individuals for whom a petition had been filed but they were waiting for the commitment proceeding and those for whom an SVP determination had been made. For ease of reference, we refer to both categories as civil committees.

13

Dr. Goldberg opined with respect to the DSH study that 60 to 70 percent of MDO's, NGI's, and LPS's participate in treatment, compared to 30 percent of SVP's. MDO's and NGI's are typically treated with medication; SVP's are treated with cognitive behavioral therapy. Individuals with schizophrenia or schizoaffective disorder generally want to treat the symptoms because they view their symptoms negatively. By contrast, SVP's with paraphilic disorder find the sexual act pleasurable, so they do not necessarily want to eliminate that feeling or acknowledge they have a problem. Further, approximately 96 percent of the MDO's that Dr. Goldberg sought to evaluate agreed to an interview, compared to 56 to 65 percent of SVP's (for 2022 and 2018, respectively). In his view, MDO's and NGI's are more willing to discuss their symptoms and crimes than SVP's. SVP's are often concerned that what they say in an interview could be used against them. He had experience with SVP's threatening him with legal action, claiming their speedy trial rights had been violated, or asserting his access to their records was illegal. MDO's and NGI's had never threatened him with legal action or made legal complaints.

At the continued hearing on January 17, 2023, the trial court admitted an exhibit prepared by DSH reflecting "litigation data" during the period from 2017 to 2019 showing legal claims filed by DSH patients. The People argued in a supplemental brief that the litigation data showed that 72 of 98 legal claims filed by DSH patients during the three-year period were filed by SVP's, who typically filed the complaints in pro per.[9] The People argued

---

[9] We include the description of the data provided by the People in their supplemental brief. The record does not contain the exhibits admitted at the hearing.

14

the data showed that SVP's are more sophisticated than other civil committees, understand their legal rights, and can make informed decisions about their right to a jury trial.

After the parties rested, the prosecutor argued the evidence showed MDO's, NGI's, and LPS's "are differently situated than SVP's in terms of their ability to perceive reality and . . . to intellectually function." Further, MDO's, NGI's, and LPS's suffer from schizophrenia or schizoaffective disorder, whereas SVP's suffer from paraphilia. In addition, the SVP's do not have a severe mental disorder and can function like any other individual. Therefore, because of the greater functioning of SVP's, "the court can be confident that they understand that right [to a jury trial]," and "that they could ask for a jury trial if they wanted one." Moreover, they are "vastly more litigious than the other groups." By contrast, the other committees "may be so severely mentally ill or out of touch with reality that they really don't understand what they're giving up, and in that case they would default to a jury trial. We do not have those concerns for SVP's." He added that at the time we decided *Washington* and *Magana II*, there was no evidence on the "stark differences in primary diagnoses" or data on the higher rate of legal claims filed by SVP's. Therefore, "the need for the jury advisement and waiver is not the same for SVP's as it is for the other classes."

Defense counsel emphasized that the evidence presented during the hearing did not "take[] away from the authority of" *McKee I, supra*, 47 Cal.4th at page 1203 that SVP's are similarly situated to MDO's. Both have been found beyond a reasonable doubt to suffer from a mental disorder that renders them dangerous, and many have been convicted of serious or violent felonies. Further, the MDO and SVP statutes have the same purpose "to protect the public from dangerous felony offenders

15

with mental disorders and to provide mental health treatment for their disorders." Defense counsel noted that a jury trial advisement and taking of a personal waiver would take about a minute or two, "with relative ease," so there was no justification for denying the jury trial protections to SVP's, especially given that they face commitment to an indeterminate term.

At the conclusion of the hearing, the trial court found that SVP's are not similarly situated to other civil committees, including MDO's, NGI's, and LPS's. The court explained, "SVP cases are long and drawn out prior to trial. It is not conceivable that trial counsel would not have discussed with a respondent his right to a court or jury trial. It is also not conceivable that trial counsel would proceed contrary to a defendant's insistence on a jury trial." The court highlighted that 75 to 80 percent of MDO's and NGI's have a diagnosis of schizophrenia and/or schizoaffective disorder, which causes them to have delusions, executive function deficits, and an inability to perform daily life functions. But SVP's do not have these deficits or difficulty performing the activities of daily life. Further, SVP's are aware of SVP law, complain about their SVP trial rights, threaten legal action, and file legal claims pro per, all of which "shows legal astuteness and legal awareness," which MDO's and NGI's do not have. He concluded, "I do not agree . . . that SVP's, NGI's, and MDO's are equally situated. I believe that SVP's are separate and apart from MDO's and NGI's for purposes of a jury trial waiver. Consequently, I do not believe that [Washington and Magana have] demonstrated that they are equally situated. I find that there is no equal protection violation. It is not necessary to go to the second prong."

Washington and Magana timely appealed.

16

## DISCUSSION

In both *Washington* and *Magana II*, we applied the equal protection framework set forth by the Supreme Court in *People v. Morales* (2016) 63 Cal.4th 399, 408 and *McKee I, supra*, 47 Cal.4th at page 1202. As we explained in *Washington*, "'The concept of equal treatment under the laws means that persons similarly situated regarding the legitimate purpose of the law should receive like treatment. [Citation.] "'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.'"'" (*Washington, supra*, 72 Cal.App.5th at pp. 471-472, quoting *Morales* at p. 408; accord, *McKee I*, at p. 1202.) We applied the same analysis in *Magana II, supra*, 76 Cal.App.5th at pp. 321-322.)

In their opening briefs in this appeal, Washington and Magana argued the trial court's January 17, 2023 order should be reversed because SVP's are similarly situated to MDO's and NGI's with respect to their right to a jury trial advisement and personal waiver. Further, they urged us to abandon the two-step approach to the traditional equal protection analysis applied by the California Supreme Court. They also argued we should apply a strict scrutiny standard of review given the deprivation of liberty at stake in a civil commitment proceeding under the SVPA. And finally, they argued that under either a rational basis or strict scrutiny standard, the denial of a jury trial advisement and personal waiver for SVP's violates equal protection because their greater awareness of their legal rights makes it *more* likely that,

17

with a jury trial advisement and required waiver, they will rationally decide whether to request a jury trial in light of their perceived interests, as compared to other civil committees impaired by schizophrenia and/or schizoaffective disorder. And even if SVP's request a jury trial more frequently than other civil committees, this would not interfere with the SVPA's goal of protecting the public because there is no basis to conclude a jury will act contrary to law or deliver a verdict that fails to protect public safety.

By the time the Attorney General filed his respondent's briefs, the Supreme Court in *People v. Hardin, supra*, 15 Cal.5th at pages 850 to 851 had eliminated the similarly-situated step of the traditional equal protection analysis, explaining, "[W]hen plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question. The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review. The burden is on the party challenging the law to show that it is not."

The Attorney General argued that because the trial court on remand limited the evidentiary hearing to the question whether SVP's are similarly situated to other civil committees, we should (again) remand to the trial court to hold a further hearing, including the potential presentation of evidence, for the court to determine whether under *Hardin* there is a rational basis for the

18

differential treatment of SVP's and other civil committees with respect to a jury trial advisement and personal waiver.[10]

Washington and Magana in their reply briefs urged us not to remand to the trial court, and instead to find on the current record that the lack of a jury trial advisement and personal waiver violates equal protection. In the alternative, they requested we stay the appeals pending the Supreme Court's decision in *People v. Cannon* (2022) 85 Cal.App.5th 786, 796 (*Cannon*), review granted February 15, 2023 (S277995), on whether rational-basis or strict-scrutiny review applies to an equal protection challenge to the SVPA's denial of a jury trial advisement and personal waiver. On December 17, 2024 we denied the requests by Washington and Magana to stay the appeals pending the Supreme Court's decision in *Cannon*.

Although we are reluctant to further delay a decision in these cases, we remand for the trial court to hold another evidentiary hearing at which the parties may present evidence and argument on the justification for treating SVP's differently from other civil committees with respect to a jury trial advisement and personal waiver. As discussed, the trial court (at the prosecutor's suggestion, but without an objection by defense counsel) bifurcated the evidentiary hearing to first consider whether SVP's and other civil committees are similarly situated with respect to the jury trial advisement and personal waiver. Further, the motions filed by Washington and Magana, each titled "motion to show SVP's

---

[10] The Attorney General also acknowledged, similar to his concession in *Magana II* (but contrary to the People's arguments on remand) that the Supreme Court in *McKee I, supra*, 47 Cal.4th at pages 1202 to 1203 and subsequent Courts of Appeal have held with respect to equal protection claims that SVP's, MDO's, and NGI's are similarly situated.

and other civil committees such as MDO's and NGI's are similarly situated as to jury trial protections such that the district attorney must justify differential treatment," only addressed whether SVP's and other civil committees are similarly situated. The subsequent briefing in the trial court and evidence and argument presented at the evidentiary hearing likewise addressed only whether SVP's are similarly situated. Now that *Hardin* has eliminated the similarly-situated step for the equal protection analysis, it is unfair to preclude the People from making an evidentiary record and presenting argument on the justifications for the differential treatment, and for Washington and Magana to present evidence and argument in response.

Further, we conclude, as we did in *Magana II, supra*, 76 Cal.App.5th at page 324, that a rational-basis standard of review applies to an equal protection challenge to the SVPA's jury trial protections. In *Magana II* we rejected Magana's argument that we should apply a strict-scrutiny equal protection analysis based on *McKee I, supra*, 47 Cal.4th at pages 1208 to 1209, which held a strict-scrutiny standard applied to the determination whether the People "can demonstrate the constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment." (See *Magana II*, at p. 323.) We observed that the *McKee I* court had cautioned, "'[W]e strongly disagree with the concurring and dissenting opinion's characterization of our view as being "that every detail of every civil commitment program is subject to strict scrutiny."'" (*Magana II, supra*, 76 Cal.App.5th at p. 323, quoting *McKee I, supra*, 47 Cal.4th at p. 1210, fn. 13.)

We concluded the rational basis analysis the Supreme Court applied in *People v. Barrett* (2012) 54 Cal.4th 1081, 1094 (*Barrett*) to review an equal protection challenge to the lack of a jury trial

20

advisement and personal waiver for persons with a developmental disability who pose a danger to themselves or others and are committed under section 6500 (as compared to the advisement and waiver required for conservatees under section 5302 of the LPS Act) was more applicable than the strict scrutiny analysis *McKee I* applied to the indefinite commitment of SVP's. (*Magana II, supra*, 76 Cal.App.5th at p. 324.) We explained, "[T]he rational basis analysis of *Barrett* is more applicable, even though made in the context of the section 6500 commitment statute, because it involves the analogous situation of the lack of a jury trial advisement and personal waiver under a civil commitment statute. Although the indefinite commitment of an alleged SVP affects the individual's fundamental right to liberty, ensuring an alleged SVP has meaningful access to the statutory right to a jury trial, while essential to the exercise of that right, does not affect a fundamental right." (*Ibid*.)

Our colleagues in Division Five of the First District have now similarly held that rational basis review governs whether the lack of a jury trial advisement and personal waiver under the SVPA violates equal protection, adopting the reasoning in *Barrett*, *Magana II*, and *People v. Nolasco* (2021) 67 Cal.App.5th 209, 225. (*Cannon, supra*, 85 Cal.App.5th at p. 798, review granted ["We agree with our appellate colleagues in *Magana* and *Nolasco* that *Barrett*, and its use of the rational basis standard, governs our case."].)[11] Washington and Magana have not provided a

---

[11] In *People v. Nolasco, supra*, 67 Cal.App.5th at pages 215 and 225, the Court of Appeal applied rational basis review to an equal protection challenge to the differential treatment of LPS conservatees with a developmental disability under section 6500 and persons with a "mental disease, defect, or disorder" subject to

21

persuasive argument for why we should deviate from *Magana II*, and now *Cannon*, and apply strict scrutiny review. We therefore reverse the January 17, 2023 order finding no equal protection violation and remand for the trial court to hold a further hearing, at which the parties may present evidence and argument, to determine whether there is a rational basis for the differential treatment of SVP's and other civil committees with respect to a jury trial advisement and personal waiver of the committee's right to a jury trial.[12]

## DISPOSITION

The January 17, 2023 order entered by the trial court in the SVP proceedings for both Washington and Magana is reversed. We remand for the trial court to hold a further hearing, at which the parties may present evidence and argument, to determine whether there is a rational basis for the differential treatment of SVP's and other civil committees with respect to the right to a jury trial advisement and a personal waiver of the committee's right to a jury trial. If the trial court determines there is an equal protection violation, the court shall vacate the orders declaring Washington and Magana to be SVP's and shall set the matters for

a "Murphy conservatorship" under the LPS Act, with respect to the end date for the one-year recommitment period.

[12] Although *Cannon, supra*, S277995 is fully briefed, the Supreme Court has not set the matter for oral argument. However, on March 14, 2025 the Supreme Court sent a letter to counsel indicating "the court could set the case for argument within the next few months." Unless the Supreme Court holds otherwise before the evidentiary hearing in this case, the trial court on remand should apply a rational basis standard in evaluating Washington's and Magana's equal protection claims.

22

a jury trial, unless the committee (Magana or Washington) provides a knowing and intelligent waiver of his right to a jury trial after being personally advised of that right.  If the court finds no equal protection violation, the orders declaring Washington and Magana to be SVP's and committing them to the California Department of State Hospitals for an indeterminate term will remain in effect.


                                        FEUER, J.

We concur:



        MARTINEZ, P. J.



        SEGAL, J.